**THE HONORABLE THOMAS S. ZILLY**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KAREN AND KEITH KRONEMAN, husband and wife, and the marital community thereof,<br><br>       Plaintiffs,<br><br>  v.<br><br>COUNTRY MUTUAL INSURANCE COMPANY, a foreign corporation,<br><br>       Defendant. | **NO. CV 14-1223 TSZ**<br><br>**PLAINTIFFS' TRIAL BRIEF** |

Plaintiffs Keith and Karen Kroneman, the ("Kronemans") submit the following Trial Brief for the Court's consideration.

## I.     INTRODUCTION AND SUMMARY

This is a consumer protection/insurance bad faith case.

Although these lawsuits are routinely termed bad faith, "The primary focus in these cases should be whether the [insurance] company has honored its obligation to observe fair claim practices." *The Law of Insurance Claim Practices Beyond Bad Faith*, Jay M. Feinman, 47 Tort Trial & Ins. Prac. L.J., Pg. 693 (2012).

PLAINTIFFS' TRIAL BRIEF— 1

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA  98043
425/835-1619; FAX: 206/971-5080

From the outset, Defendant Country Mutual Insurance Company ("Country Mutual") unfairly discriminated against the Kronemans because they retained a public adjuster to help them present their claim. Country Mutual's assigned adjuster, Greg Stariha ("Stariha") told Kyle Grinnell ("Grinnell") of Allwest Adjusters ("Allwest") that he was going to treat the Kronemans' differently because they were using a public adjuster.

During the adjustment of the fire loss Country Mutual victimized the Kronemans by 1) attempting to underpay their structure claim by $24,169.25; 2) withholding $1,459.59 in contents payments for 2 years and 10 months (finally paying the actual cash value for 6 items of contents on August 18, 2015); 3) failing to pay $319.37 for additional living expense utility fees; 4) refusing to pay $797.00 for an engineer/hygienist who had performed air clearance testing and VOC reporting; 5) threatening the Kronemans with eviction from their cramped hotel room because they refused to accept unsuitable alternate housing; 6) refusing to timely pay First Choice Restoration ("FCR") for incurred charges thereby exposing the Kronemans to threats of litigation; and 7) "making a federal case" out of this lawsuit by removing this relatively minor procedural bad faith case to Federal Court to increase the costs of litigation.[1]

These acts and omissions constitute violations of the Washington Administrative Code claims handling regulations, the Consumer Protection Act and they are breaches of Country Mutual's duty of good faith.

---

[1] It is doubtful that this Court ever had jurisdiction over this case. As Plaintiffs pointed out in their Motion for Remand, Country Mutual did not present sufficient evidence in its August 8, 2014 Notice of Removal to demonstrate that the amount in controversy at that time exceeded $75,000. DKT No. 8. Now, it seems clear that the amount in controversy is significantly below the District Court's jurisdictional limit. Attached is the Honorable Marsha J. Pechman's Remand Order based on lack of jurisdiction in *Stegall v. Allstate Indem. Co.*, Case No. C08-668 MJP issued more than 13 months after the case was removed.

PLAINTIFFS' TRIAL BRIEF— 2

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA  98043
425/835-1619; FAX: 206/971-5080

1

## II.    FACTS

2

**A.    Country Mutual's wrongful adjustment and refusal to timely pay the claim.**

3

**1.    The covered loss:**

4

On September 29, 2012 the Kronemans had in full force and effect a homeowner's

5

insurance policy issued by Defendant Country Mutual, for their home located at 9507 149th St. E.,

6

Puyallup, Washington.

7

On September 29, 2012 the Kronemans suffered an accidental fire that was covered under

8

their Country Mutual insurance policy. The Kronemans' suffered damage to their home, an

9

outbuilding and their family's personal property.

10

**2.    The adjustment of the claim:**

11

On the day of the fire loss the Kronemans retained the services of Grinnell to assist them in

12

presenting their claim to Country Mutual. Country Mutual assigned adjuster Stariha to adjust the

13

Kronemans' claim.

14

-    **Violation of WAC 284-30-330(14) – unfairly discriminating against claimants because they are represented by a Public Adjuster:**

15

16

Grinnell testified that at one of their first meetings to discuss the claim, Stariha flatly told

17

him, " . . . that he was going to treat the insureds different; he was going to be tighter on them

18

because I was involved." Grinnell's general impression of Stariha was that he was being a bully.

19

-    **Violation of WAC 284-30-330 (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, and (4) Refusing to pay claims without conducting a reasonable investigation.**

20

21

22

**Country Mutual initially attempted to significantly underpay the Kronemans' structure claim:**

23

24

25

PLAINTIFFS' TRIAL BRIEF— 3

The Kronemans retained Step Up Construction ("Step Up") to repair their fire damaged home. Step Up directed its estimator Bernie Williams ("B. Williams") to visit the loss site, inspect the damage and prepare an estimate of repairs for the damaged structure.

On October 16, 2012 Country attempted to significantly underpay the Kronemans' structure claim when its adjustor, Tim Foederer ("Foederer") prepared an impossibly low estimate of repairs in the amount of $36,453.36 RCV. This estimate was insufficient to return the Kroneman home to its pre-loss condition.

The Kronemans refused to accept Country's low-ball offer and Country Mutual, after many discussions, grudgingly agreed to pay a significantly higher structure settlement of $58,926.18. (Note: This agreed upon structure amount does not include the siding issue, which was the subject of Country Mutual's Motion for Partial Summary Judgment.)

- **Violation of WAC 284-30-330 (1) Misrepresenting pertinent facts or insurance policy provisions.**

**Country Mutual's bad faith handling of the Kronemans' Additional Living Expense:**

After the fire, the Kronemans were allowed to stay in a hotel until more suitable temporary housing could be located while repairs were being completed on the fire-damaged home. DMA Insurance Housing Assistants ("DMA") was tasked with finding the Kronemans suitable accommodations while the loss was being adjusted.

On October 11, 2012 Stariha was annoyed that the Kronemans had not agreed to accept one of the unacceptable rental homes they had been shown and he sent the following email to Grinnell:

Kyle,

I'd like to make sure we are clear on the ALE issue. The Kronemans are currently in

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA  98043
425/835-1619; FAX: 206/971-5080

the Holiday Inn Express. The rate is $294.84/night. DMA housing has found two homes that are closer to their home than the Holiday Inn Express. One option is $2850/month and the other is $3,295/month. Both homes are furnished. Both homes are available for immediate occupation. DMA has indicated that the Kronemans have refused at least the first option because the home is off the bus route for the children. While I understand this would be an inconvenience, I do not feel it to be a valid reason to continue the stay in the Holiday Inn or for Country to pay that increased cost. If you have another option you would like to run by us, please do so. We are open to suggestions.

**However, we do feel that the amount Country would owe to reimburse the Kronemans under ALE coverage should be capped at the cost of the monthly rent at the either of the options provided by DMA**. I would like to resolve this issue prior to the weekend.

Greg Stariha, AIC, CPCU (emphasis added)

Still frustrated by the Kronemans' proper refusal to accept an inappropriate rental home that would not allow pets, on October 17, 2012 Stariha threatened to cut off payment for additional living expenses:

Kyle,

We are not able to consider your request for a buyout on the ALE coverage. In order to be covered, the expenses must be incurred. **We are willing to give DMA housing one more week to find a house that the Kronemans will accept. We will terminate the hotel direct bill as of October 26.** Per DMA, it will take about a week for them to get into a house after signing a lease. If you or your clients come up with another solution, please contact me to discuss. Please have them forward the invoices and meal receipts at any time for reimbursement.
Sincerely,

Greg Stariha, AIC, CPCU (emphasis added)

On October 24, 2012 Stariha reiterated his threat.

Kyle,

I would be willing to extend the hotel to Nov. 2 if this property is a go. **If not, we will have to stand by our decision to cut off the hotel on October 26 as previously noted.** Again, if you have any other housing possibilities or options you would like for

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA  98043
425/835-1619; FAX: 206/971-5080

us to consider, please let me know.

Greg Stariha, AIC, CPCU (emphasis added)

On December 8, 2012, because Stariha failed to pay the rental home charges in advance, the Kronemans received an eviction notice. This caused significant emotional distress to the family.

- **Country Mutual refused, in bad faith, to pay for incurred hygienic work.**

Stariha also refused to pay for the necessary retention of an engineer/hygienist that was retained by Step Up as a safety issue for the Kronemans' children. The contractor's Senior Estimator, Bernie Williams, testified as to the need for the hygienist's work:

Q.  Okay. Skipping ahead -- bear with me -- to Page 30, I see an estimate for air clearance testing. Can you explain to me what that is?

A.  Air clearance testing, as part of a fire, is important because of the materials not just that were burnt in the fire that have off-gassed chemicals, but also as the result of new construction or repairs when adhesives and those types of things are used. **In this case, I believe Ms. Kroneman and one of her children had asthma, pretty significant asthma, which is part of the reason that we recommended air testing**.

Q.  Do you know if air testing was performed?

A.  It was.

Q.  And do you know what the results of that air testing were?

A.  I do.

Q.  And what were those?

A.  I believe the industrial hygienist found pockets of unacceptable gases in areas of the home. I recommend -- I know he recommended cycling of the air in the home. I don't remember how many cycling -- cyclings. I just don't recall that amount. But it was -- it was excessive, in order to clear the home of gases.

(emphasis added) B. Williams Dep. pages 24-25.

On February 21, 2013 Stariha's supervisor, Robin Reed, sent the following correspondence to the Kronemans' representative:

Good Morning,

I have reviewed this billing with Greg Stariha. We did not agree to this testing prior to it being done. It is not usually and customary for these fees to be incurred. **At this time, we are unable to issue payment for this testing.**

Thank you,

Robin Reed (emphasis added)

Country Mutual never did pay the $797.00 incurred hygienist's fees.

- **Violation of WAC 284-30-330 (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.**

    **Country Mutual delayed payment for the Kronemans' contents/ personal property for 2 years and 10 months.**

The Kronemans timely submitted a claim to Country Mutual for 6 items of damaged personal property. On August 21, 2013, in a ploy to avoid paying for these items of contents, Country Mutual demanded that the Kronemans provide ages of the items. At trial the Plaintiffs will show that ages were not required and could have been easily determined by Country Mutual based on the information it already had.

On March 13, 2013 Country Mutual refused to pay First Choice Restoration ("FCR") for additional charges incurred. On September 25, 2013, six months later, the Kronemans were informed that Country Mutual had reconsidered its position and issued payment to FCR on its invoice.

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA  98043
425/835-1619; FAX: 206/971-5080

On September 27, 2013, faced with an impasse and the upcoming one-year contractual limitation period, the Plaintiffs filed the instant lawsuit.

On October 25, 2013 despite the fact that the Kronemans had an open claim for damaged personal property, Country closed its file.

- **Violations of WAC 284-30-330(2) and WAC 284-30-360(3) Communication Regulations.**

In October of 2013 the Kronemans retained the serviced of David Forte ("Forte") of Washington Insurance Claims Services ("WICS") to present their personal property claim to Country Mutual.

On October 30, 2013 Forte sent Defendant a letter indicating the ages of the claimed personal property items.

On November 7, 2013 Defendant Country Mutual acknowledged Forte's letter. Thereafter, Country Mutual wrongfully refused to adjust the Kronemans' contents claim.

On July 21, 2014 the Kronemans sent an Appraisal demand to the Defendant's attorney *for the contents items*. Country Mutual did not respond to that pertinent communication.

Plaintiffs should be allowed to argue at the time of trial that Country Mutual violated the WAC when it wrongfully refused to acknowledge and respond to Plaintiffs' demand for appraisal on the contents claim.

- **Violation of WAC 284-30-370 Every insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time.**

On August 18, 2015, 1053 days after the date of loss, Country Mutual's attorney sent a check in the amount of $1,459.59 to the Kronemans to pay the Actual Cash Value ("ACV") for the

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA 98043
425/835-1619; FAX: 206/971-5080

6 items of personal property. However, the Kronemans' policy provides them with Replacement Cost coverage and Country Mutual's delay in payment has effectively denied the Plaintiffs of the ability to obtain the full replacement cost value of their policy benefits.

### III.   DISPUTED JURY INSTRUCTIONS

#### A.   Instructions as to the WAC claims handling regulations.

The Kronemans will request instructions informing the jury as to specific claims handling regulations contained in the WAC. These regulations define the minimum standards of care for claims handling in the state of Washington. RCW 48.30.010(2).  A single violation of any of these regulations constitutes a breach of an insurer's duty of good faith.  *Rizzuti v. Basin Travel Service of Othello, Inc.*, 125 Wn. App. 602, 615-16, 105 P.3d 1012 (2005) (citing *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 697, 17 P.3d 1229 (2001)).  And a single violation of any of these claims handling regulations proves the first three elements of a Consumer Protection Act violation.

#### B.   Instructions related to the obligations of an insurer.

The Kronemans will also seek an instruction regarding the disparate bargaining power of their insurance companies.

> In first party situations, the <u>insurer</u> establishes the conditions for making and paying claims. The <u>insurer</u> evaluates the claim, determines coverage, and assesses the monetary value of the coverage.  Thus, the insurance contract brings the insured a certain peace of mind that the insurer will deal with it fairly and justly when a claim is made.  Conduct by the insurer which erodes that security purchased by the insured breaches the insurer's duty to act in good faith.  Plaintiff's Proposed Instruction No. 26.

*Coventry Assoc. v. American States Ins. Co.*, 136 Wn.2d 269, 282, 961 P.2d 933 (1998) (emphasis added).

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA  98043
425/835-1619; FAX: 206/971-5080

**C.   The filing of a lawsuit does not extinguish the insurance contract or relieve an insurer of its continuing duties to comply with the WAC claims handling regulations.**

This issue has been briefed in response to Country Mutual's Motion for Partial Summary Judgment, the Motions in Limine and here for the final time. The Kronemans respectfully points out that the authorities previously cited demonstrate the fallacy of allowing an insurer to breach the contract and Washington state law with impunity after a lawsuit has been filed.

A finding that upon the commencement of litigation the Defendant no longer had a duty to investigate and promptly pay the Kronemans' claims or comply with the WAC regulations is simply wrong. Because the insurance claim was ongoing during the pendency of the litigation, the Kronemans and Country Mutual had continuing claim related contractual and statutory duties independent of the Court's rules. The California Supreme Court held, "[i]t is clear that the contractual relationship between insurer and the insured does not terminate with commencement of litigation." *White v. Western Title*, 40 Cal.3d 870, 885, 710 P.2d 309 (1985).[2]

---

[2] "We also note that this approach is consistent with that of almost every other jurisdiction to have addressed the issue. Those courts have consistently held that the duty of good faith, whether an inherent aspect of the insurance contract or a statutory construct, continues during any litigation that is brought to determine liability for the underlying tort. *See, e.g., White v. Western Title Ins. Co.*, 40 Cal.3d 870, 221 Cal.Rptr. 509, 710 P.2d 309, 316-17 (1985) (holding that the duty of good faith continues during litigation because the contractual relationship continues); *Haddick v. Valor Ins.*, 315 Ill. App.3d 752, 248 Ill. Dec. 812, 735 N.E.2d 132, 133 (2000) ("We reverse and hold that an insurance company has a duty to act in good faith in settling a claim against its policyholder in a timely manner both before and after suit is filed."); *Harris v. Fontenot*, 606 So.2d 72, 74 (La.Ct.App.1992) ("We first note that nowhere in either statute is there an express distinction limiting the application to the pre-litigation conduct of the insurer. . . . [W]e believe that it is clear that the statute was enacted to impose a requirement of good faith and fair dealing on the insurer, requirements that are no less important after litigation has begun as before."); *Palmer v. Farmers Ins. Exchange*, 261 Mont. 91, 861 P.2d 895, 913 (1993) ("[A]n insurer's duty to deal fairly and not to withhold payment of valid claims does not end when an insured files a complaint against the insurer."); *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa.Super.Ct.1999) ("[W]e refuse to hold that an insurer's duty to act in good faith ends upon the initiation of suit by the insured.") *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 517-18 (KY 2006).

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA  98043
425/835-1619; FAX: 206/971-5080

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Moreover Judge Jones has recently held that "In a case like this one, where the insured's claim remains open, the insured's decision to sue its insurer does not cut off the insurer's obligations to adjust the claim." *Tavakoli v. Allstate Property and Casualty Insurance Company*, No. C11-1587 RAJ (W.D. Wash. Jan. 15, 2013) See also, *Lains v. American Family Mutual Insurance Company*, No. C14-1982 JCC (W.D. Wash. July 27, 2015).

The Kronemans respectfully invite the Court's attention to a law review article addressing this very issue. 76 Wash. L. Rev. 927: IN THE LITIGATION BUSINESS: INSURANCE COMPANY LIABILITY FOR ACTS OCCURRING IN THE COURSE OF LITIGATION UNDER THE WASHINGTON CONSUMER PROTECTION ACT (2001). The Kronemans will submit the following instruction:

> The act of filing a lawsuit by the Kronemans did not extinguish the insurance contract with Country Mutual Insurance Company, and did not relieve Country Mutual Insurance Company of its continuing duties to comply with the Washington Administration Code claims handling regulations.  Plaintiff's Proposed Instruction No. 31.

### IV.   CONCLUSION

Every WAC violation and every delay in payment by Country Mutual constitutes a violation of the Consumer Protection Act and the Defendant's obligation of good faith. The Plaintiffs have used every available legal avenue to force Country Mutual to fully pay what it owed on their claim, including demanding appraisal and filing the instant suit. Country Mutual has argued that the payments made after its WAC violations should erase any injuries. But there is no authority holding that a WAC violation may be erased by the mere payment of funds after the fact.

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA  98043
425/835-1619; FAX: 206/971-5080

1

Respectfully submitted this 8th day of October, 2015.

2

3

LAW OFFICES OF MICHAEL T. WATKINS

4

/s/ Michael T. Watkins
Michael T. Watkins, WSBA #13677

5

Attorney for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LAW OFFICES OF MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE, WA  98043
425/835-1619; FAX: 206/971-5080

1

2

3

4

5

6                         UNITED STATES DISTRICT COURT

7                    WESTERN DISTRICT OF WASHINGTON
                                AT SEATTLE
8

9   JANET STEGALL and ROGER STEGALL, a              Case No. C08-668 MJP
    married couple,
10
                         Plaintiffs,
11                                                   ORDER TO REMAND
12          v.

13  ALLSTATE INDEMNITY COMPANY, an
    insurance company,
14
                         Defendant.
15

16          On May 7, 2009, this Court called for briefing on the issue of subject matter jurisdiction.

17  After reviewing Defendant's brief (Dkt. No. 74), Plaintiffs' brief (Dkt. No. 76), Defendant's

18  reply (Dkt. No. 77), and the balance of the record, the Court hereby REMANDS this action to

19  state court for the reasons set forth below.

20                                      **Background**

21          On December 13, 2007, Plaintiffs Janet and Roger Stegall initiated this action to recover

22  money for wind-related damage from their insurer, Defendant Allstate. (Dkt. No. 76-1).  On

23  February 2, 2008, Defendant asked Plaintiffs to stipulate that their damages exceeded $75,000.

24  (Dkt. No. 76-2).  Plaintiffs responded that they had not done sufficient investigation of the claim

25  to stipulate to such a point (Dkt. No. 76, Declar. of Timothy Bearb at 2). On February 8, 2008,

26  Defendant removed the case to the District Court for the Western District of Washington. (Case

27

ORDER — 1

No. 08-cv-00212-TSZ at Dkt. No. 1).  Plaintiffs filed a motion to remand on February 22, 2008. (Case No. 08-cv-00212-TSZ at Dkt. No. 9).  On March 27, 2008, while the motion was pending in front of Judge Zilly, Plaintiffs transmitted a settlement demand offer to Defendant in the amount of $37,791.71. (Dkt. No. 77, Declar. of Timothy Bearb at 2). The offer was not accepted by Hartford. Id.  On April 2, 2008, Judge Zilly remanded the action to King County Superior Court. (Case No. 08-cv-00212-TSZ at Dkt. No. 13).  On April 25, 2008, Plaintiffs responded to Defendant's Interrogatories. (Dkt. No. 1, Plaintiffs Stegall's Answers and Responses to Defendant's First Interrogatories and Requests for Production to Plaintiffs at 1-9).  In their response, Plaintiffs stated that they were uncertain of their total damages, but they believed they were entitled to $10,000 for each violation of the Washington Consumer Protection Act (CPA) and $20,000 for each violation of the Washington Administrative Code. (Id. at 8).  On April 28, 2008, Defendant removed the case from Washington State Superior Court to the District Court for the Western District of Washington for the second time. (Dkt. No. 1).  At the time of removal, Defendant asserted diversity jurisdiction on the belief that Plaintiffs could recover over $75,000 under the CPA and for a breach of bad faith as stated in Plaintiffs' answer to interrogatories.  Defendant's notice of removal gave no other basis for calculating the required amount-in-controversy, and failed to include a prospective estimate of reasonable attorneys' fees as part of the amount-in-controversy calculation.

**Analysis**

28 U.S.C. § 1447(c) states that "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." It is now apparent that Plaintiffs's CPA and bad faith claims at the time of removal could not have totaled more than $75,000, which is the requisite amount-in-controversy for diversity jurisdiction. 28 U.S.C. § 1332(a).

The Ninth Circuit has held that, "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in

ORDER — 2

the amount in controversy." <u>Galt G/S v. JSS Scandinavia</u>, 142 F.3d 1150, 1156 (9th Cir. 1998). Plaintiffs made their CPA claim under RCW 19.86.090, which specifically authorizes an award of "reasonable attorney's fees." Defendant bears the burden of establishing jurisdiction when the notice of removal is filed by a preponderance of the evidence. <u>Valdez v. Allstate Ins. Co.</u>, 372 F.3d 1115, 1117 (9th Cir. 2004). Plaintiffs claims for damages under the CPA and bad faith alone did not exceed the $75,000 amount in controversy requirement. Here, the defendant failed to give a specific figure on anticipated attorneys' fees in its notice for removal. Subject matter jurisdiction is typically analyzed based on the "pleadings filed at the time of removal without reference to subsequent amendments." <u>Sparta Surgical Corp. v. National Ass'n of Sec. Dealers</u>, 159 F.3d 1209, 1213 (9th Cir. 1998).

Although attorneys' fees now amount to more than $75,000, remand is proper. Before Defendant removed the case for the second time, Defendant had the power to settle the entire case for under $38,000. Defendant did not include a prospective estimate of attorneys' fees in their notice of removal, but based jurisdiction entirely on an erroneous interpretation of CPA and bad faith claim case law. Defendant's assertion of the amount-in-controversy was not sufficient to meet the requirements of diversity jurisdiction. Defendant has not met its burden of showing that the amount in controversy was greater than $75,000 at the time of removal.

### Conclusion

This Court does not have subject matter jurisdiction over this action, and the case is hereby remanded to state court.

The Clerk is directed to send a copy of this order to all counsel of record.

Dated: May 12, 2009.

Marsha J. Pechman
U.S. District Judge

ORDER — 3

The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT
OF WASHINGTON AT SEATTLE

KAREN AND KEITH KRONEMAN,
husband and wife, and the marital community
thereof,

      Plaintiffs,

  v.

COUNTRY MUTUAL INSURANCE
COMPANY,

      Defendant.

NO. CV 14-01223 TSZ

CERTIFICATE OF SERVICE

    Under penalty of perjury under the laws of the State of Washington, I declare that on this 8th

day of September, 2015, I electronically filed the foregoing with the Clerk of the Court using the

CM/ECF system with which will send notification of such filing to the following:

Daniel Thenell, WSBA#37297
Kirsten Curtis, WSBA#48985
Thenell Law Group
12909 SW 68th Parkway, Suite 320
Portland, OR 97223
Telephone: (503) 372-6450
dan@thenelllawgroup.com
Kirsten@thenelllawgroup.com

_____
Sonia Chakalo

CERTIFICATE OF SERVICE — 1

LAW OFFICES OF
MICHAEL T. WATKINS
6100 219th ST SW, SUITE 480
MOUNTLAKE TERRACE,
WA 98043
425/835-1619; FAX: 206/971-5080